Marc HALPERN, Appellant (Plaintiff),

v.

Chancy WHEELDON and Kim Wheeldon, d/b/a Mill Iron Ranch, Appellees (Defendants).

No. 94–147.

Supreme Court of Wyoming.

Feb. 24, 1995.

Robert B. Ranck of Ranck & Schwartz, Jackson, and Timothy W. Miller, Casper, Wyoming, for appellant.

Richard J. Mulligan, Jackson, for appellees.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellant Marc Halpern appeals from the district court's order which granted a summary judgment in favor of Appellees Chancy Wheeldon and Kim Wheeldon, who were doing business as the Mill Iron Ranch.

We reverse and remand.

### Issues

Mr. Halpern presents these issues for our review:

1. Whether appellees owed a duty of reasonable care to appellant.

2. Whether being thrown while attempting to mount an oversized horse without a mounting block or proper assistance is an intrinsic risk of horseback riding that cannot reasonably be eliminated, altered or controlled.

3. Whether it was improper and erroneous for the district court to find that no dangerous condition was created by appellees.

### Facts

Mr. Halpern and his family were vacationing in Teton County in May 1991. The Halperns contacted the Wheeldons to make arrangements for Mr. Halpern and his daughter to go horseback riding at the Wheeldons' ranch. The Wheeldons were involved in the business of renting horses and taking people on horseback rides for hire. Mrs. Halpern informed Mrs. Wheeldon that Mr. Halpern and his daughter had very little experience with horses. Mrs. Wheeldon assured Mrs. Halpern that the horses were docile and safe.

After the Halpern family had arrived at the ranch, Mr. Wheeldon and a ranch employee provided horses for Mr. Halpern and his daughter to ride. The ranch employee held the reins for Mr. Halpern while he

attempted to mount his horse. When Mr. Halpern had difficulty mounting the horse, Mr. Wheeldon helped him by lifting him up onto the horse's back. The horse started to circle and back up, and eventually it began to buck. The horse pulled the reins away from the ranch employee and threw Mr. Halpern to the ground. Mr. Halpern's left ankle was severely broken as a result of the fall.

Mr. Halpern filed a lawsuit against the Wheeldons, alleging that the Wheeldons had been negligent by: (1) selecting a horse for him which was not docile, safe, or appropriate; (2) failing to secure the horse while he mounted; (3) failing to assist him while he was attempting to mount the horse; and (4) failing to warn him about the horse's erratic behavior. The Wheeldons filed a motion for a summary judgment. After considering the parties' arguments, the district court granted the Wheeldons' motion, and this appeal followed.

### Discussion

"Summary judgment is appropriate when no genuine issue of material fact exists and when the prevailing party is entitled to have a judgment as a matter of law." *Sandstrom v. Sandstrom*, 884 P.2d 968, 971 (Wyo.1994). "A grant of summary judgment is reviewed from the viewpoint favorable to the party opposing the judgment. We accord no deference to the district court's decisions on issues of law." *Smith, Keller & Associates v. Dorr & Associates*, 875 P.2d 1258, 1264 (Wyo.1994) (citation omitted).

The district court stated that the Wheeldons were insulated from liability in this case pursuant to the Recreation Safety Act (the Act), WYO.STAT. §§ 1–1–121 to –123 (Supp. 1992),[1] and granted a summary judgment in their favor. The district court specifically found: "Getting thrown off or falling from a horse is an inherent risk in riding any horse. The risk is therefore intrinsic to the sport and one which cannot be reasonably altered, eliminated or controlled." Mr. Halpern ar-

gues that the Act did not apply in this case because his injury did not result from a risk which is inherent to the sport of horseback riding. We agree that the district court misapplied the Act and, therefore, erred by granting a summary judgment in favor of the Wheeldons.[2]

Section 1–1–123 of the Act provides:

(a) Any person who takes part in any sport or recreational opportunity assumes the inherent risk of injury and all legal responsibility for damage, injury or death to himself or other persons or property that results from the inherent risks in that sport or recreational opportunity.

(b) A provider of any sport or recreational opportunity is not required to eliminate, alter or control the inherent risks within the particular sport or recreational opportunity.

(c) Actions based upon negligence of the provider not caused by an inherent risk of the sport or recreational opportunity shall be preserved pursuant to W.S. 1–1–109 [the comparative negligence statute].

"Provider" is defined as being "any person or governmental entity which for profit or otherwise, offers or conducts a sport or recreational opportunity." Section 1–1–122(a)(ii). The statutory definition of "sport or recreational opportunity" includes dude ranching and horseback riding. Section 1–1–122(a)(iii). Section 1–1–122(a)(i) defines "inherent risk" as being "any risk that is characteristic of or intrinsic to any sport or recreational opportunity and which cannot reasonably be eliminated, altered or controlled."

▆▆▆ This Court has never interpreted the provisions of the Act. Under our well-established rules of statutory construction, we "endeavor to interpret statutes in accordance with the Legislature's intent." *State Department of Revenue and Taxation v. Pacificorp*, 872 P.2d 1163, 1166 (Wyo.1994). We must first determine whether a statute is clear or ambiguous. "[A] statute is unambig-

---

**1.** In 1993, the Legislature amended § 1–1–122 of the Act to more extensively cover "equine" activities. Those amendments do not apply in this case because they did not become effective until July 1, 1993.

**2.** Since the district court based its decision upon the Act and we do not agree with the district court's conclusion, the scope of this opinion is limited to an analysis of the Act.

uous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability." *Allied–Signal, Inc. v. Wyoming · State Board of Equalization*, 813 P.2d 214, 220 (Wyo.1991). "[A] statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations." 813 P.2d at 219–20. "[W]hether an ambiguity exists in a statute is a matter of law to be determined by the court." 813 P.2d at 220. If the language of a statute is clear and unambiguous, we apply the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. *Soles v. State*, 809 P.2d 772, 773 (Wyo.1991).

■ Under the plain and ordinary language of the statute, a risk must satisfy two requirements in order to be classified as being an inherent risk. The risk must be characteristic of or intrinsic to the sport or recreational opportunity, and it must be one which cannot be reasonably eliminated, altered, or controlled. Section 1–1–122(a)(i). A provider has no duty to eliminate, alter, or control the inherent risks of an activity, and any person who chooses to take part in a sport or recreational opportunity assumes all inherent risks which are associated with that opportunity. Section 1–1–123(a), (b).

■ The Act employs assumption-of-risk language. The assumption-of-risk expression has a number of meanings, and the generic use of the expression leads to much confusion. *See Anderson v. Louisiana–Pacific*, 859 P.2d 85, 89 (Wyo.1993) (Macy, C.J., concurring); *Brittain v. Booth*, 601 P.2d 532, 534–35 (Wyo.1979). Under the clear and unambiguous language of the Act, the assumption-of-risk terminology is intended to limit the duty which a provider owes to a participant. This type of assumption of risk is known as primary assumption of risk. W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 68 (5th ed. 1984).

Primary assumption of risk must be distinguished from secondary assumption of risk. Secondary assumption of risk is generally considered to be an affirmative defense which a defendant may raise after the plaintiff has met his burden of proving that the defendant breached a legal duty which he owed to the plaintiff. *See* Annotation, *Effect of Adoption of Comparative Negligence Rules on Assumption of Risk*, 16 A.L.R.4TH 700 (1982). In other words, secondary assumption of risk is a type of contributory negligence. Cathy Hansen & Steve Duerr, *Recreational Injuries & Inherent Risks: Wyoming's Recreation Safety Act*, 28 LAND & WATER L.REV. 149, 156 (1993). In Wyoming, the absolute defense of secondary assumption of risk (contributory negligence) was abolished when the Legislature adopted the comparative negligence statute. WYO.STAT. § 1–1–109 (1988) (amended 1994). Secondary assumption of risk is a basis for apportionment of fault under the comparative negligence scheme. *Brittain*, 601 P.2d at 534. Since the Act is intended to limit the duty which a provider owes to a participant, our analysis in this case is not affected by the adoption of the comparative negligence statute. *See Effect of Adoption of Comparative Negligence Rules on Assumption of Risk*, *supra* § 5.

■ In order to recover in any negligence action, a plaintiff must establish that the defendant owed a duty of care to him. *See Roybal v. Bell*, 778 P.2d 108, 111 (Wyo. 1989). Generally, the issue of duty is decided by the court as a matter of law. *Id.* In certain instances, however, the duty issue involves questions which are basic issues of fact. For example, in *Thunder Hawk by and through Jensen v. Union Pacific Railroad Company*, 844 P.2d 1045 (Wyo.1992), we adopted the RESTATEMENT (SECOND) OF TORTS § 339 (1965) as the test to be utilized in determining whether a defendant owes a duty to a child trespasser under the "attractive nuisance" doctrine. 844 P.2d at 1048–49. In *Thunder Hawk by and through Jensen*, we stated that genuine issues of material fact existed with regard to whether the defendant owed a legal duty to the child trespasser and ruled that those issues should be resolved by the jury. *Id.*

The Second Circuit Court of Appeals employed a similar analysis in *Dillworth v. Gambardella*, 970 F.2d 1113 (2d Cir.1992), when it interpreted Vermont's inherent risk statute. In that case, the Second Circuit

Court of Appeals recognized that the decision as to whether a risk is inherent involved the principle of primary assumption of risk and that, thus, a duty analysis must be employed. 970 F.2d at 1119. However, the court stated that, because the Vermont Legislature had not defined what risks are inherent to a certain activity, the issue was properly presented to the jury as a question of fact. 970 F.2d at 1119–20. *See also Estate of Frant v. Haystack Group, Inc.*, 641 A.2d 765 (Vt. 1994).

In their arguments to this Court, the parties rely upon a recent law review article which analyzed the Act. Hansen & Duerr, *supra.* The authors of that article argue vehemently that the issue of whether a particular risk is inherent to a sport or recreational opportunity is a question of law which must be decided by the court. Hansen & Duerr, *supra* at 173–75. We have reviewed numerous cases and authorities on this issue, and we conclude that, when genuine issues of material fact exist, it is proper to present the issue to the jury of whether a risk is inherent to a particular activity.

We note that Wyoming's Recreation Safety Act is more concise than similar statutes in other states are. Many of our sister states' inherent risk statutes provide nonexclusive lists of risks which the Legislatures have determined are inherent to certain activities. *See, e.g.,* UTAH CODE ANN. §§ 78–27–51 to –54 (1992 & Supp.1994); IDAHO CODE §§ 6–1101 to –1109 (1990). When a court is presented with a case under that type of statute, it may compare the facts of the case to the list of legislatively defined inherent risks and decide, as a matter of law, whether the plaintiff's injury resulted from an inherent risk. *See, e.g., Northcutt v. Sun Valley Company,* 117 Idaho 351, 787 P.2d 1159 (1990); *Schmitz v. Cannonsburg Skiing Corporation,* 170 Mich.App. 692, 428 N.W.2d 742 (1988); *Berniger v. Meadow Green–Wildcat Corp.,* 945 F.2d 4 (1st Cir.1991). The Wyoming Legislature did not provide the courts with that type of guidance. We agree with the court in *Dillworth:*

> To say that inherent risks are assumed by sports participants "as a matter of law" is of little solace to defendants when the question remains: what risks in a sport are inherent, obvious, or necessary to its

participation, a question that ordinarily must be resolved by the jury. 970 F.2d at 1119.

We recognize that some trials could be avoided and that litigation costs could be reduced if the courts were to decide as a matter of law whether a particular risk is inherent to a sport or recreational opportunity. In appropriate cases where no genuine issues of material fact exist, the district court may decide as a matter of law that the provider does not owe a duty to the participant. However, in many cases, the costs of litigation will not be reduced because the losing party will appeal from the district court's legal determination in an attempt to persuade this Court that a particular risk is or is not inherent.

In this case, genuine issues of material fact exist with regard to whether the risks encountered by Mr. Halpern are intrinsic to the sport of horseback riding and whether the Wheeldons could have reasonably altered, eliminated, or controlled those risks. A genuine issue of material fact exists as to whether the Wheeldons could have assisted Mr. Halpern in mounting the horse in a different manner and, thereby, reduced or eliminated the risks which are associated with mounting.

As a procedural matter, the jury must decide whether the Wheeldons owed a duty to Mr. Halpern by determining whether the risks encountered by Mr. Halpern while he was mounting his horse are inherent to the sport of horseback riding. If the jury determines that the risks are inherent, the Wheeldons will be insulated from liability under the Act. If, however, the jury determines that the risks are not inherent and that the Wheeldons, therefore, owed a duty of care to Mr. Halpern, liability should be determined as it would be in any negligence case.

### Conclusion

We hold that the district court erred by granting a summary judgment in favor of the Wheeldons.

Reversed and remanded.