**Howard COOPERMAN and Trudy Cooperman, Plaintiffs,**

v.

**Matt DAVID, d/b/a/ Wyoming Rivers and Trails, Defendant.**

**No. 98–CV–009–WD.**

United States District Court,
D. Wyoming.

June 9, 1998.

Order Granting Reconsideration
Aug. 17, 1998.

Robert R. Rose, III, Kryra Sue Knapp, Rose & Rose, Cheyenne, WY, Keith J. Stone, Law Offices of Keith J. Stone, San Diego, CA, for Plaintiffs.

Gary R. Scott, Hirst & Applegate, Cheyenne, WY, for Defendants.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DOWNES, District Judge.

The above-captioned case having come before the Court on Defendant's Motion for Summary Judgment, the Court having reviewed the materials submitted in support of and in opposition to the motion, having heard oral argument and being otherwise fully informed in the premises, FINDS and ORDERS as follows:

### BACKGROUND

The factual background underlying this case is a familiar one. · Plaintiffs hired the Defendant to lead them on a˘ horseback riding excursion near Pinedale, Wyoming. Defendant supplied both the horse and the tack and led Plaintiffs and their family members to a campsite where they enjoyed a lunch. On the return trip, Mr. Cooperman stopped his horse in order to wait for others in the group. While stopped his saddle slipped sideways causing him to fall to the ground and injuring his shoulder.

The legal background of this case is anything but common. This motion centers on Wyoming's Recreation Safety Act and whether a slipping saddle is an "inherent risk" under that provision. Wyo. Stat. §§ 1–1–121 to 1–1–123 (Michie 1997). Defendant argues that slipping saddles are a natural part of the activity of horseback riding and consequently that the Plaintiff assumed the risk of such a possibility. The conclusion of his argument is that he is entitled to summary judgment. Plaintiffs challenge the Defendant's contention by arguing that the question of duty, as framed by the recreational safety act, is a question for the jury. They also argue that a slipping saddle is not an inherent risk of horseback riding or alternatively, that the Defendant breached an assumed a duty of reasonable care in maintaining the saddle.

### STANDARD OF REVIEW

"By its very terms, [the Rule 56(c)] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;

the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

The trial court decides which facts are material as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.... [W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* at 248, 106 S.Ct. 2505; *see also Carey v. United States Postal Serv.*, 812 F.2d 621, 623 (10th Cir.1987). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 623. In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). However, "[w]hen a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

### DISCUSSION

In the case of *Halpern v. Wheeldon*, 890 P.2d 562 (Wyo.1995), the Wyoming Supreme Court found that whether a risk is inherent to a particular activity was a proper question for the jury and not for the Court. *Id.* at 566. Subsequent to that decision, the Wyoming Legislature revised the Recreational Safety Act. In particular, it modified the definition of inherent risk by eliminating the requirement that an inherent risk was a risk that could not "reasonably be eliminated, altered or controlled." This Court must now address whether this statutory change undermined the *Halpern* decision and made the question of inherent risk one for the court.

Prior to the statutory modification, the definition of inherent risk had two distinct parts. First, an inherent risk had to be one which was "characteristic of or intrinsic to any sport or recreational opportunity...." Wyo. Stat. Ann. § 1–1–122(a)(i) (Michie 1989). Second, the risk had to be one "which [could not] reasonably be eliminated, altered or controlled." *Id.* The amendment eliminated the second component of the definition and altered the first. As a result, inherent risks were defined as "those dangers and conditions which are characteristic of, intrinsic to, or an integral part of any sport or recreational opportunity." Wyo. Stat. Ann. § 1–1–122(a)(i) (Michie 1997).

In *Halpern* the Wyoming Supreme Court determined that while the question of whether a given risk qualified as an inherent risk under the statute was an issue related to duty, the question required a jury determination. Underlying the Court's decision was its judgment that the two components of an inherent risk involved an analysis of factual issues. While the elimination of the second component of the inherent risk definition removes some of that concern, it does not completely eliminate it.

The *Halpern* court quoted the case of *Dillworth v. Gambardella*, 970 F.2d 1113 (2d Cir.1992) with favor. That case stated:

> To say that inherent risks are assumed by the sports participants "as a matter of law" is of little solace to defendants when the question remains: what risks in a sport are inherent, obvious or necessary to its participation, a question that ordinarily must be resolved by the jury.

*Id.* at 1119. The *Halpern* court went on to find that there were genuine issues of material facts as to whether the risks involved could be altered, eliminated or controlled *and* "whether the risks encountered by Mr. Halpern [were] intrinsic to the sport ...." *Halpern*, 890 P.2d at 566. The *Halpern* court was concerned with the factual issues surrounding both components of the inherent risk definition. As a result, this Court concludes that the approach adopted in *Halpern v. Wheeldon* remains a valid framework under the new statute.

The framework of *Halpern* requires the Court to go one step further and examine whether there are any issues of material fact surrounding the "inherent risk" question. The Wyoming Supreme Court noted that "[i]n appropriate cases where no genuine issues of material fact exist, the district court may decide as a matter of law that the provider does not owe a duty to the participant." *Halpern*, 890 P.2d at 566. The parties raise a myriad of contested facts, but it is important to isolate those facts material to the issue of "inherent risk." In essence, an inherent risk is one of two things. It is either a characteristic which is an anticipated part of the recreational activity that helps to make the activity the experience that it is, or it is an undesirable risk which is simply a collateral part of the recreational activity. Catherine Hansen Stamp, *Recreational Injuries and Inherent Risks: Wyoming's Recreational Safety ActAn Update*, 33 Land & Water Law Review 249, 270–71 (1998); *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1047 (Utah 1991). The only factual issues of consequence to determining whether a given risk is an inherent risk are those reflecting whether a risk may be classed among one of these two species.

In this case the parties briefs raise a number of factual contentions such as how much instruction was given to the Plaintiff before his trail ride, and whether the saddle was properly cinched. These issues, however, are largely irrelevant. The Act states that a recreational provider is not obliged "to eliminate, alter or control the inherent risks within the particular sport or recreational opportunity." Wyo. Stat. § 1–1–123(b) (Michie 1997). To base an analysis of inherent risk upon the action of the recreational provider, puts the cart before the horse. Such an analysis amounts to a determination of negligence before the determination of duty. That is not to say that the underlying causes of the risk should be completely ignored in all cases. Whether the slipping saddle was caused by a loose cinch, by an equipment malfunction or by the sabotage of an evil minded third-party may well influence whether the jury considers the risk integral to or characteristic of the activity.

In this case the parties have presented precious little evidence regarding the relationship of slipping saddles to the activity of horseback riding. Plaintiffs have submitted the affidavit of an expert witness Jim Anderson. Mr. Anderson testifies as to his opinion that a saddle will not slip if it is properly tightened. As noted above, consideration of the adequacy of the recreational provider's actions is inconsequential to determining the character of the risk. Mr. Anderson also opines that equipment failure is not an "inherent risk" of horseback riding. In so stating he reaches the ultimate legal conclusion without expressing how the risk is not characteristic of, intrinsic to or an integral part of horseback riding. The Defendant provides no documentary of testimonial evidence bearing on the inherent risk question. Instead the Defendant argues that because saddles are not permanently affixed to horses and because horses move underneath saddles they are bound to slip. They argue that the logical conclusion is that a slipping saddle is an "inherent risk" of horseback riding. While the argument may seem logical, the argument of counsel alone cannot form competent evidence for the purposes of summary judgment. *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1025 (10th Cir.1992) (noting that "statements of counsel are not summary judgment evidence"). Consequently, the question of inherent risk remains unresolved by the record before this Court.

It is THEREFORE

**ORDERED** that Defendant's Motion for Summary Judgment is **DENIED.**

## ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION

The above-captioned case comes before this Court on Defendant's Motion to Reconsider the Court's Order of June 9, 1998, denying Defendant's Motion for Summary Judgment. The Court having reviewed the materials submitted in support of and in opposition to the Motion, having heard oral argument and being otherwise fully informed finds and orders as follows:

In this case Plaintiff has brought suit seeking recovery for injuries sustained while horse-back riding near Pinedale, Wyoming. Plaintiff alleges that his saddle slipped while

riding a horse provided by the Defendant causing him to fall to the ground. The Court issued its Order on Defendant's Motion for Summary Judgment finding that a question of fact existed on the issue of whether a slipping saddle was an "inherent risk" under Wyoming's Recreational Safety Act. In the course of making that ruling this Court articulated the specific issues relevant to a determination of whether or not a risk is inherent. Due to a lack of evidence relevant to that point the Court determined that summary judgment was inappropriate. Defendant now comes before the Court with additional evidence, in particular the deposition testimony of one of Plaintiffs' expert witnesses and contends that summary judgment is now appropriate.

### STANDARD OF REVIEW

■ The standard of review appropriate to this motion is the subject of some confusion in the briefing by the parties. Plaintiffs argue that the Defendant's motion to reconsider should be treated as a motion to alter or amend the judgment under Fed.R.Civ.P. 59(e). Pursuant to that standard, Plaintiffs argue that the Defendant must demonstrate that the evidence it now seeks to rely upon was unavailable at the time of the hearing on the Defendant's original motion. The Tenth Circuit has said that only *post judgment* motions for reconsideration should be treated in this manner. *Webber v. Mefford,* 43 F.3d 1340, 1345 (10th Cir.1994). No judgment has been issued in this case and consequently the standards urged by the Plaintiffs are inapplicable.

Determining the proper standard of review does pose some challenges. There are only limited decisions addressing motions to reconsider a denial of summary judgment. Several courts have recognized that the civil rules do not contemplate motions for reconsideration of interlocutory orders such as an order denying summary judgment. Courts have treated such motions in a number of different ways. Some have adopted the Rule 59 standard and treated them as post judgment motions for reconsideration. *See e.g. U.S. v. Iron Mountain Mines Inc.,* 812 F.Supp. 1528, 1555 (E.D.Cal.1992). When faced with a similar motion the U.S. District Court for the District of Kansas ruled that it

should be treated as a renewed motion for summary judgment. *In re Independent Serv. Orgs. Antitrust Litigation,* 964 F.Supp. 1479, 1482 (D.Kan.1997). The court found that the additional factual issues and legal arguments which the parties had raised within the motion for reconsideration justified a reexamination of the case within the framework of a motion for summary judgment. *Id.* The particular circumstances of this case appear to warrant a similar treatment of the Defendant's motion.

The Court notes that the Wyoming Recreational Safety Act had not been applied by a court in its current form at the time Defendant first filed his motion. As a result, the parties did not have clear guidance as to what issues were and were not relevant to the issue of inherent risk. Treating the Defendant's motion as a renewed motion for summary judgment allows the Court to now review the question of inherent risk within the relevant facts of this case at the pre-trial stage, thereby conserving the resources of the parties and this Court.

Consequently the common standards governing motions for summary judgment motions apply in this case. Those standards are well settled. "By its very terms, [the Rule 56(c) ] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

■ The trial court decides which facts are material as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.... [W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* at 248, 106 S.Ct. 2505; *see also Carey v. United States Postal Serv.,* 812 F.2d 621, 623 (10th Cir.1987). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 623. In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). However, "[w]hen a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

## DISCUSSION

In support of its renewed motion for summary judgment the Defendant cites to the deposition testimony of Plaintiffs' expert witness, W. James Anderson. In his deposition Mr. Anderson testified that a slipping saddle is "always something that is a possibility of happening, regardless of whether it being the build of the horse or riding of the rider . . . ." He also agreed with Defendant's counsel when he suggested that saddles have a tendency to loosen after they are initially secure. When asked about the possible causes of slipping saddles Mr. Anderson described a litany of possible causes including; stretching leather, the tensing or relaxing of a horse, the horse losing weight from sweat, compression of certain types of saddle pads and loosening of the cinch due to the movement of the horse.

■ The Wyoming Recreation Safety Act requires that an "inherent risk" be one which is "characteristic of, intrinsic to or an integral part of" a given sport or recreational activity. Wyo. Stat. Ann. § 1–1–122(a)(i) (Michie 1997). This Court has noted that an inherent risk may be "an undesirable risk which is simply a collateral part of the recreational activity." (Order on Summary Judgment, June 6, 1998, at 5). Mr. Anderson's testimony tends to show that slipping saddles are a common occurrence during horse-back rides. His description of the many causes of slipping saddles and the need to constantly be on guard against loosening cinches indicates that having a saddle slip is characteristic of horseback riding. His remarks on the risk of a slipping saddle meet the parameters articluated in this Court's prior ruling which govern inherent risk and consequently it appears that summary judgment is appropriate.

The Plaintiffs challenge that conclusion by citing to other portions of Mr. Anderson's deposition testimony. The citations, however, relate only to whether the risk of a slipping saddle is or is not one which may be avoided or eliminated by the actions of the recreational service provider. This Court has held in its prior rulings that such considerations are irrelevant to the question of "inherent risk." The Plaintiff points to no other evidence tending to demonstrate that slipping saddles are not characteristic to the activity of horse-back riding. As a result, the Court cannot discern a material issue of fact in this case.

■ One other contention made by the Plaintiffs deserves comment. Plaintiffs have argued that even if the Recreation Safety Act eliminates any duty owed by the Defendant to the Plaintiff, this Defendant assumed such a duty through its actions. In support of this proposition Plaintiffs cite to the Restatement (Second) of Torts which states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965).

Plaintiff argues that keeping the cinch tightened on Plaintiff's saddle was a service necessary for his protection and therefore qualifies as an assumed duty under the Restatement of Torts. As Plaintiff acknowledges, the rule, as stated in the Restatement, is a general rule. In this case that rule has been supplanted by the Wyoming Recreational Safety Act and its provisions on the determination of duty. Applying the assumed duty rule in cases involving the Recreational Safety Act case would ignore the

Act's provisions on the determination of duty and would lead to a defacto repeal of the statute.

The Court recognizes that its reading of the Wyoming Recreational Safety Act provides enormous protection to those in the business of providing recreational activities. This case provides only a glimpse of the possible breadth that this protection may one day assume. Consumers in Wyoming are now faced with an entire industry whose economic and consequent legislative power enables them to conduct business with only a passing thought to the safety of those who utilize their services. Despite this frightening prospect, this Court recognizes its place in our nation's federal system of government. A court should not decimate the purpose of a legislative act, no matter how distasteful, when that purpose is clearly incorporated in the language of the act.

It is THEREFORE,

**ORDERED** that Defendant's Renewed Motion for Summary Judgment is GRANTED.