Norma Lynn CARDEN, Plaintiff,

v.

Bernard L. KELLY and Karlynn A. Kelly, Defendants.

No. 01–CV–0055–B.

United States District Court, D. Wyoming.

Nov. 23, 2001.

Gerard R. Bosch, Law Offices of Jerry Bosch, Wilson, for Plaintiff.

S.B. Freeman, III, Bormuth & Freeman, Cody, for Defendant.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

This case arises from the personal injuries suffered by the Plaintiff while on a day trip trail horseback ride with the Defendants. The matter is currently before the Court on the Defendants' Motion for Summary Judgment. Upon reading the briefs, hearing oral argument, and being fully advised of the premises, the Court **FINDS** and **ORDERS** as follows:

### Statement of Parties and Jurisdiction

The Plaintiff, Ms. Norma Lynn Carden, is a resident of Virginia, and has filed this action against the Defendants, Bernard L. Kelly and Karlynn A. Kelly, as individuals residing in the State of Wyoming and doing business within the state of Wyoming as Big Sandy Lodge. This Court exercises jurisdiction pursuant to 28 U.S.C. § 1332, Diversity Jurisdiction. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

### Background

The following facts are related in a light most favorable to the Plaintiff:

The Plaintiff brings this action to recover for personal injuries suffered on September 19 and 20, 1998, during a day horseback ride, provided by the Defendants in the Bridger–Teton National Forest. On September 19, 1998, the Plaintiff and her husband at the time Roy Kinney, were patrons of the Defendants' lodge, and had scheduled a day of scenic horseback riding with Defendants as part of their stay. The Plaintiff and her husband were accompanied on this day trail ride by their guide, Defendants' employee, Mr. Patrick Andrews.

Prior to embarking on the trail ride, Plaintiff informed Defendants' employees that she was inexperienced with horses and that she needed a gentle horse. During the morning hours of trail ride, Plaintiff claims her horse stumbled several times, failed to stay on the trail, and wanted to return to the lodge. Plaintiff alleges that Defendants' employee Mr. Andrews was informed of, and witnessed the horse's behavior but did nothing. Mr. Andrews

assured the Plaintiff that everything was fine, but he did not provide her with any meaningful instruction on how to handle the horse or its behavior. Plaintiff claims that her horse continued to stumble throughout the morning ride, and at the lunch break her horse refused to stop and walked a good distance from the other riders. Mr. Andrews, continued to reassure the Plaintiff that everything was alright.

During the afternoon hours of September 19, 1998, the riders reached the end of the trail at Pyramid lake, 12–13 miles from Defendants' lodge. Plaintiff claims that once they arrived at Pyramid lake her horse was tired and reluctant to continue on. However, at approximately 3:30 p.m., Mr. Andrews continued to push the inexperienced riders past Pyramid lake, up a steep and rocky slope with no marked trail, in order to view a scenic lake on the other side of the peak.

After starting their climb the Plaintiff's horse lost its balance and fell, rolling on top of the Plaintiff and causing her serious injuries, including eight fractured ribs, a partially collapsed lung, and a fractured pelvis. Plaintiff claims she was unable to move, had a hard time breathing, and thought she was going to die. Mr. Andrews was equipped with only a space blanket, ibuprofen, and a few bandages. He did not have any other first aid supplies or a communication device. After placing the space blanket on the Plaintiff, Mr. Andrews rode back to the lodge for help. By the time Mr. Andrews reached the lodge, it was too late to organize a rescue before nightfall.

At approximately 1:30 a.m. on September 20, 1998, Mr. Andrews returned from the lodge with a tent, a heater, and sleeping bags. Plaintiff alleges that Mr. Andrews informed her that Defendant Bernard Kelley had told Mr. Andrews not to return to help the Plaintiff. Plaintiff claims that as a precaution she was not moved into the tent until it began to snow in the early morning hours of September 20, 1998. At approximately 11:00 a.m. on September 20, 1998, the Plaintiff was rescued by an Idaho Search and Rescue team.

Plaintiff asserts causes of action for; negligence and gross negligence against the Defendants based upon the alleged misconduct of Defendants' employee, Mr. Andrews in how he guided the horseback trip; the alleged misconduct of the Defendants for the manner in which they maintained and trained their horses, and supervised and trained their employees. Plaintiff is also claiming damages for past and future medical expenses, past and future lost wages, past and future pain and suffering, loss of enjoyment of life, punitive damages and costs.

Defendants' Motion for Summary Judgment claims that the Plaintiff's suit is barred by the Wyoming Recreation Safety Act, which extinguishes the duty of care placed upon providers of recreational activities to eliminate, alter or control "inherent risks" of the sport or recreational activity. WYO. STAT. § 1–1–123. Defendants claim that it is an inherent risk of the sport of horseback riding that the horse may stumble and fall causing injury to the rider.

The Plaintiff contends that the Wyoming Recreation Safety Act does not apply in this case because it is preempted by federal law. Additionally, the Plaintiff argues that even if the Wyoming Recreation Safety Act is not preempted by federal law, the accident and injuries suffered by her were not an inherent risk of the specific type of horse back riding she engaged in.

### Standard of Review

"Summary judgment is appropriate if the record reveals that 'there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law.' " *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir.1996) (quoting Fed. R.Civ.P. 56(c)). The Court views the evidence in the light most favorable to the party opposing summary judgment. *Id.* "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir.1997). "While the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the nonmovant's claim." *Jenkins*, 81 F.3d at 990.

### Analysis

■ A federal Court sitting in diversity must ascertain and apply state law to reach the result the Wyoming Supreme Court would reach if faced with the same question. *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir.2000). In *Cooperman*, the Tenth Circuit upheld the United States District Court, for the District of Wyoming's decision granting Defendant's motion for summary judgment that, pursuant to the Wyoming Recreation Safety Act, an excursion leader had no duty of care to an injured horseback rider with respect to slipping of loosely cinched saddle. *Id.*

■ In order to prevail on any negligence action, a plaintiff must first establish that the defendant owed him or her a duty of care. *Cooperman*, 214 F.3d at 1165; (quoting *Halpern v. Wheeldon*, 890 P.2d 562, 565 (Wyo.1995)). Whether the Defendants in the present case owed the Plaintiff a duty of care depends on whether, under the specific facts of this case, the slipping and falling of a horse causing injury to the Plaintiff was an inherent risk of her horseback ride within the meaning of the Wyoming Recreation Safety Act. Thus, the Plaintiff carries the burden of establishing either that the Wyoming Recreation Safety Act does not apply or that her injuries were caused by an non inherent risk under the Recreation Safety Act.

### Preemption

Responding to the Defendants' Motion For Summary Judgment, the Plaintiff claims that the Wyoming Recreation Safety Act does not apply because it is preempted by federal law. Plaintiff's argument is essentially that: 1) Plaintiff's injuries occurred on federal land, the Bridger–Teton National Forest; 2) Defendants, in order to operate their business in the Bridger–Teton National Forest had to obtain a special-use permit from the Forest Service; 3) because Plaintiff's injuries occurred on federal land, federal law, namely Forest Service regulations and the Defendants' special-use permit apply; 4) the special-use permit contains provisions concerning negligence and injury to patrons of Forest Service permit holders, which Plaintiff claims requires the permit holders to inform their guests of the risks and have them sign a risk acknowledgment form; and 5) provisions in the Forest Service regulations requiring patrons of Forest Service concessionaires to assume "usual" risks of activities within the National Forest conflicts with, and thus preempts, the Wyoming Recreation Statute.

Defendants contend that the Forest Service provisions relied on by the Plaintiff are discretionary, and the Defendants, as Forest Service special-use permit holders did not have to comply with these voluntary provisions. Additionally, even if these provisions apply, the federal standards can co-exist with the state standards established by the Wyoming Recreation Safety Act. Therefore, Defendants claim that the

Wyoming Recreation Safety Act is not preempted by Forest Service regulations or the Defendants special-use permit.

### Legal Analysis of Preemption

 "Absent consent or cession a State undoubtedly retains jurisdiction over federal lands within its territory, but Congress equally surely retains the power to enact legislation respecting those lands pursuant to the Property Clause. And when Congress so acts, the federal legislation necessarily overrides conflicting state laws under the Supremacy Clause." *California Coastal Comm'n v. Granite Rock,* 480 U.S. 572, 581, 107 S.Ct. 1419, 94 L.Ed.2d 577 (1987). In *California Coastal Commission v. Granite Rock,* the Supreme Court further stated that "the Property Clause gives Congress plenary power to legislate the use of the federal land" on which Defendants hold their permits. *Coastal Comm'n,* 480 U.S. at 581, 107 S.Ct. 1419.

 Additionally, the federal government does not assert exclusive jurisdiction over the public lands within the states. *Kleppe v. New Mexico,* 426 U.S. 529, 96 S.Ct. 2285, 2293–2294, 49 L.Ed.2d 34 (1976). The states are free to enforce their criminal and civil laws on those lands, but where those state laws conflict with valid legislation passed pursuant to the property clause, the law is clear; the state law must recede. *Id.*

This Court agrees with both parties, that pursuant to the Property Clause of the United States Constitution Congress has the plenary power to legislate the use of the federal lands upon which the Defendants hold their special-use permit. *Coastal Comm'n,* 480 U.S. at 581, 107 S.Ct. 1419. The question in the present case, however is whether Congress has enacted legislation with respect to federal land that would preempt the Wyoming Recreation Safety Act. The Supreme Court has set forth the following preemption analysis:

> [S]tate law can be pre-empted in either of two general ways. If Congress evidences an intent to occupy a given field, any state law falling within that field is pre-empted. If Congress has not entirely displaced state regulation over the matter in question, state law is still preempted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.

*Coastal Comm'n,* 480 U.S. at 581, 107 S.Ct. 1419 (citations omitted).

The pertinent provision of the Forest Service Manual [1] relied on by the Plaintiff states:

> 2713.32–Liability and Insurance Coverage. All concession uses authorized by the forest service, including resorts, ..., packers,..., which cater to the vacationing or traveling public, involve hazards to the users in varying degrees.
>
> A certain element of risk is involved for individuals engaging in most activities on National Forests. Swimming, boating, skiing, riding, mountain climbing, and even hiking, camping, and picnicking involve such risks in varying degrees.
>
> Individuals engaging in these activities are expected to assume these *usual risks.* If safe operation, safe equipment, and good supervision are provided by concession permitees, it is reasonable to expect participants, personally, to as-

---

1. The Forest Service Manual contains legal authority, objectives, policies, responsibilities, instructions and guidance to Forest Service line officers and primary staff to execute as-

signed programs and activities. Pltf's Ex. A, "Overview of Forest Service Directive System".

sume risks from accidents not related to provisions and operation of safe equipment in safe condition, such as might result from being thrown from a horse, upsetting a boat, encountering dangerous weather, or being injured by snakes or other wild animals.

Pltf's Ex. B, p. 4 "Forest Service Manual".

Plaintiff claims that the federal pronouncement contained in the Forest Service Manual that individuals engaged in activities such as horseback riding incur the "usual risks" (such as being thrown from a horse) applies only when there has been good supervision and safe operation and use of equipment by concession permit holders. Plaintiff argues that in the present case that she was not properly supervised on how to safely ride the horse, nor was the horse and Defendants' employee properly supervised. Therefore, Plaintiff argues this federal regulation contained in the Forest Service Manual conflicts with, and cannot co-exist with the Wyoming Recreation Act, which mandates that those who engage in certain activities assume the "inherent risk" of those activities, without regard to the safety or supervision of the activity.

The Wyoming Recreation Act, which Plaintiff claims is in conflict with the above federal regulations, states in pertinent part:

> (a) Any person who takes part in any sport or recreational opportunity assumes the inherent risks in that sport or recreational opportunity, whether those risks are known or unknown, and is legally responsible for any and all damage, injury or death to himself or other persons or property that results from the inherent risks in that sport or recreational opportunity.

WYO. STAT. § 1–1–123. The Recreation Act provides the following definitions:

> (i) "Inherent risk" with regard to any sport or recreational opportunity means

those dangers or conditions which are characteristic of, intrinsic to, or an integral part of any sport or recreational opportunity;

WYO. STAT. § 1–1–122 (emphasis added).

Plaintiff admits there is no congressional intent to occupy the field and preempt Wyoming tort law, yet she contends that the federal regulations and the Wyoming Recreation Safety Act cannot co-exist. Plaintiff essentially claims that the state statute stands as an obstacle to the accomplishment of the purposes and objectives of the Forest Service Manual.

 Whether a state law stands as an obstacle to the accomplishment of Congress's objectives is determined by examining the federal statute and identifying its purpose and intended effects. *Crosby v. National Foreign Trade Council,* 530 U.S. 363, 120 S.Ct. 2288, 2290, 147 L.Ed.2d 352 (2000).

The Federal Land Policy and Management Act of 1976 ("FLPMA") sets forth Congressional declaration of policy regarding the disposition and management of federal public lands. The provision of FLPMA most applicable to the present case states "that in administering public land statutes and exercising discretionary authority granted by them, the Secretary be required to establish comprehensive rules and regulations after considering the views of the general public." 43 U.S.C. § 1701(a)(5). Yet, the savings provision of FLPMA provides that:

> Nothing in this Act shall be construed as limiting or restraining the power and authority of the United States or
>
> > (6) as a limitation upon any State criminal statute or upon the police power of the respective States, or as derogating the authority of a local police officer in the performance of his duties, or as depriving any State or

political subdivision thereof of any right it may have to exercise civil and criminal jurisdiction on the national resource lands; or as amending, limiting, or infringing the existing laws providing grants of lands to the States.

43 U.S.C. § 1701(g)(6).

Further, the Secretary of Agriculture is authorized to set forth the terms and conditions "to permit the use and occupancy of suitable areas of land within the national forests... for the purposes of constructing or maintaining hotels, resorts, and any other structures or facilities necessary or desirable for recreation, public convenience or safety...." 16 U.S.C. § 497. Under the authority of FLPMA and 16 U.S.C. § 497, the Secretary of Agriculture and the National Forest Service has established the Forest Service Manual, Handbook, and Special Use–Permit at issue in the present case.

After reviewing Congressional policy contained in FLPMA it appears that its purpose was to aid in the management, disposal, and maintenance of federal public land in the nations best interest. FLPMA's accompanying savings provision indicates that the intended purpose was not to preempt or conflict with state civil laws. Further, the provisions of the Forest Service Manual relied on by the Plaintiff, containing the "usual" risk language, does not appear to have any objective or intent which preempts the Wyoming Recreation Safety Act. In fact the "usual risk" language in the Forest Service Manual and accompanying language appears to limit the liability of the concessioners within the National Forest, and does not appear significantly different in language or purpose from the "inherent risk" language in the Wyoming Recreation Safety Act.

In creating this manual and accompanying regulations, the Forest Service surely recognized the existence of state law in this area. If Congress or the Forest Service wanted to preempt state law they could have done so by specifically stating their intent to preempt or by establishing requirements that clearly conflict with the Wyoming Recreation Safety Act. The Forest Service regulates and issues permits for numerous activities on National Forest Lands within the State of Wyoming, from ski resorts to cattle grazing. If the wide variety of activities requiring permits on National Forest Land are to be exempt from, and actually preempt state civil codes, the Forest Service Regulations must clearly indicate such an intent or clearly be in conflict with the state law. In this case, the Forest Service Manual does not clearly indicate an intent to preempt Wyoming tort law or clearly conflict with the Wyoming Recreation Safety Act.

Furthermore, the language contained in the Forest Service Manual stating that "if safe operation, safe equipment, and good supervision are provided by concession permitees, it is reasonable to expect participants to assume risks from accidents not related to provisions and operation of safe equipment in a safe condition, such as might result from being thrown from a horse" (Pltf's Ex. B, p. 4) does not set forth a specific criteria or standard to determine if the equipment is in fact safe or operated safely. Nor does this provision indicate how it impacts the notion that patrons of permit holders assume the "usual risks". Additionally, the provision demanding that equipment and its operation must be safe does not conflict with the Wyoming Recreation Safety Act.

■ In reading the Forest Service Manual and accompanying regulations together with the Wyoming Recreation Safety Act it appears the two may be read in *para materia*. When determining whether a risk is inherent under the Wyoming Recre-

ation Safety Act the Court cannot look at the risk in "a vacuum, apart from the factual setting to which the plaintiff was exposed." *Cooperman v. David,* 214 F.3d 1162, 1167 (10th Cir.2000). Whether the "equipment" used by the Defendants in this case was safe or safely operated may be considered by the Court when viewing the specific factual setting in which the Plaintiff was injured. Thus, the Wyoming Recreation Safety Act does not conflict with, nor is it an obstacle to the implementation of the Forest Service Manual.

 Plaintiff further argues that the language in the Forest Service Handbook preempts the Wyoming Recreation Safety Act. The Forest Service Handbook contains a mandatory liability requirement that all special use permits for outfitters and guides operating in the National Forest. Pltf's Ex. C, p. 4–5, "Forest Service Handbook". The language contained in the Special Use Permit issued to the Defendants, d/b/a Big Sandy Lodge, states:

X. *Liability Waiver* (R4–B2). The permit holder will not request or require persons served to sign a liability waiver for activities authorized by this permit. The permit holder may, however, advise such persons of the risks involved and have them sign a Visitor's Acknowledgment of Risk (Sample Follows), provided a copy of the proposed form has been submitted to and approved by the issuing Forest Officer.

Pltf's Ex. D, p. 10, "Big Sandy Lodge–Special Use Permit".

 Plaintiff's argument that the non-waiver of liability clause and the acknowledgment of risk clause, in Defendants' special use permit, preempts the Wyoming Recreation Safety Act is without merit in the present action. First, the "Liability Waiver" states that a permit holder will not request or require patrons of the permit holder to sign a liability waiver. This liability waiver in no way preempts or conflicts with the Wyoming Recreation Safety Act. It merely preempts the individual permit holder from requiring its patrons to waive liability for recreational activities through a written waiver. Additionally, in the present case, the Plaintiff never signed such a waiver of liability, nor is there any evidence indicating that the Defendants requested the Plaintiff sign such a waiver.

Second, the risk acknowledgment clause in Defendants' special use permit, which states "permit holder may, however, advise such persons of the risks involved and have them sign a Visitor's Acknowledgment or Risk" (Pltf's Ex. D, p. 10 "Big Sandy Lodge Special Use Permit") does not preempt the Recreation Safety Act in the present action. By using the verb "may", the special use permit conveys that compliance with the risk acknowledgment clause is purely optional. Defendants did not voluntarily undertake to have the Plaintiff sign a risk acknowledgment form. Thus, the Defendants did not undertake or engage in a contractual duty which could potentially conflict with the Wyoming Recreation Safety Act.

**Wyoming Recreation Safety Act**

 Defendants argue that the Plaintiff's suit is prohibited by the Wyoming Recreation Safety Act, because Defendants did not owe a duty of care to the Plaintiff to eliminate the inherent risks of horseback riding. In support of this claim, Defendants claim that it is an inherent risk of horseback riding that a horse will stumble and fall causing injury to the rider, and that Plaintiff's injuries resulted from such a risk.

Plaintiff claims that in order to determine if her injuries were an inherent risk of the sport of horseback riding the Court must look to the specific type of horseback riding engaged in by the Plaintiff and the specific circumstances in which the

horseback riding took place. Plaintiff argues that in light of the specific type of horseback riding engaged in by the Plaintiff and the specific circumstances of the Plaintiff's ride, her injuries were not caused by an inherent risk of the sport of horseback riding.

In order to prevail on any negligence action, a plaintiff must first establish that the defendant owed him or her a duty of care. *See Cooperman v. David,* 214 F.3d 1162, 1165 (10th Cir.2000). Whether the Defendants owed the Plaintiff, Ms. Carden, a duty of care depends on whether the slipping and falling of the horse, under the facts of the present case, was an inherent risk of horseback riding under the Wyoming Recreation Safety Act. Thus, the Plaintiff, Ms. Carden, carries the burden of establishing that her injuries were not caused by an inherent risk of day trail horseback riding. *Id.* The Wyoming Recreation Safety Act Provides:

(a) Any person who takes part in any sport or recreational opportunity assumes the inherent risks in that sport or recreational opportunity, whether those risks are known or unknown, and is legally responsible for any and all damage, injury or death to himself or other persons or property that results from the inherent risks in that sport or recreational opportunity.

(b) A provider of any sport or recreational opportunity is not required to eliminate, alter or control the inherent risks within the particular sport or recreational opportunity.

(c) Actions based upon negligence of the provider wherein the damage, injury or death is not the result of an inherent risk of the sport or recreational opportunity shall be preserved pursuant to W.S. 1–1–109.

wyo. Stat. § 1–1–123. The Wyoming Recreation Safety Act further provides the following definitions:

(i) *"Inherent risk"* with regard to any sport or recreational opportunity means those dangers or conditions which are characteristic of, intrinsic to, or an integral part of any sport or recreational opportunity;

(ii) *"Provider"* means any person or governmental entity which for profit or otherwise, offers or conducts a sport or recreational opportunity. This act does not apply to a cause of action based upon the design or manufacture of sport or recreational equipment or products or safety equipment used incidental to or required by the sport or recreational opportunity;

(iii) *"Sport or recreational opportunity"* means commonly understood sporting activities including baseball, softball, football, soccer, basketball, swimming, hockey, *dude ranching,* nordic or alpine skiing, mountain climbing, river floating, hunting, fishing, *back country trips, horseback riding and any other equine activity,* snowmobiling and similar recreational opportunities;

(iv) *"Equine activity"* means;

(A) Equine shows, fairs, competitions, performances or parades that involve any or all breeds of equines;

(B) Any of the equine disciplines;

(C) Equine training or teaching activities, or both;

(D) Boarding equines;

(E) Riding, inspecting or evaluating an equine belonging to another, whether or not the owner has received some monetary consideration or other thing of value for the use of the equine or is permitting a prospective purchaser of the equine to ride, inspect or evaluate the equine;

(F) *Rides, trips, hunts or other equine activities of any type however informal or impromptu;*

(G) *Day use rental riding, riding associated with a dude ranch or riding associated with outfitted pack trips; and*
(H) Placing or replacing horseshoes on an equine.

Wyo. Stat. § 1–1–122 (emphasis added).

■■■■■ The Recreation Safety Act limits the duty that a provider of a recreational activity owes to a participant. *Cooperman*, 214 F.3d at 1165, (referring to *Halpern v. Wheeldon*, 890 P.2d 562, 565 (Wyo.1995)). However, the "intent behind the Recreation Safety Act was not to preclude parties from suing for a provider's negligence, it was merely to stop people from suing providers for those risks that were inherent to a sport." *Madsen v. Wyoming River Trips*, 31 F.Supp.2d 1321, 1328 (D.Wyo.1999). Thus, a cause of action still exists for the negligence of a provider under the Act. *Id.*

■■■■ Generally under Wyoming law, "the issue of duty is decided by the Court as a matter of law." *Cooperman*, 214 F.3d at 1166 (referring to *Halpern*, 890 P.2d at 565–566). However, the Wyoming Supreme Court has held that when a genuine issue of material fact exists, the issue of duty is a question of fact for the jury, and thus whether a risk is inherent or not under the Wyoming Recreation Safety Act is a question of fact for the jury. *Cooperman*, 214 F.3d at 1166 (citing *Halpern*, 890 P.2d at 565–566). The Wyoming Supreme Court in *Halpern* conceded that when no material questions of fact exist, the district court may decide as a matter of law that the provider does not owe a duty to the participant under the Safety Act. *Id.*

In order to determine whether the Plaintiff's cause of action survives Defendants' Motion For Summary Judgment, the Court cannot simply look to the abstract character of the inherent risks of horseback riding; the Court must look to the specific facts of the present case to determine whether there is a duty owed to the Plaintiff. *Madsen*, 31 F.Supp.2d at 1328. The Tenth Circuit has elaborated on this fact specific standard by stating:

Horseback riding undoubtedly carries some inherent risk that the rider will fall off the horse and get injured. A horse could stumble on an uneven path, or rear, or simply begin to gallop for no apparent reason. All of these risks clearly would qualify as inherent risks of horseback riding. *Simply because some risks are inherent in horseback riding, however, does not mean that all risks of falling from a horse are necessarily inherent; instead, it is necessary to look factually at the specific risk to which the rider was exposed. When attempting to determine whether a risk is inherent to a sport, we can not look at the risk in a vacuum, apart from the factual setting to which the rider was exposed. And, we must evaluate the risk at the greatest level of specificity permitted by the factual record.*

*Cooperman*, 214 F.3d at 1167 (emphasis added). "Thus, the duty question is best resolved by framing the question correctly." *Madsen*, 31 F.Supp.2d at 1328.

Properly framed, the duty question in the present case is whether a horse (which experienced difficulty throughout a day trail ride) stumbling and falling and consequently causing injury to an inexperienced rider, is an inherent risk of a guided day trip trail horseback ride onto a steep rocky slope with no marked trail. Plaintiff, through the affidavit of Ms. Julie Goodnight, a certified Master Riding Instructor, has presented a genuine issue of material fact as to whether the horse slipping and falling in the present case was an inherent risk of the day trail ride specifically experienced by the Plaintiff. Ms. Goodnight agrees with the Defendants, and their experts that generally a horse may stumble and fall at any time and any place. How-

ever, Ms. Goodnight claims that in the Plaintiff's day trail ride certain actions and inactions on the part of the Defendants caused a risk of injury to the Plaintiff that is not inherent in horseback riding. Specifically, Ms. Goodnight stated that Defendants' failure to properly educate the Plaintiff on how to handle the horse, their failure to match Plaintiff to the horse, combined with taking the Plaintiff up a steep rocky slope, with no marked trail created a risk of the horse slipping and falling that is not inherent in day trip trail horseback riding.

In *Madsen v. Wyoming River Trips, Inc.*, 31 F.Supp.2d 1321, this Court found there was a genuine issue of material fact as to whether being "jostled around and bumping heads while people are in the front of the boat (and not in seats) is an inherent risk of river rafting." *Id.* at 1329. Similarly, in the present case there is a genuine issue of material fact as to whether a horse, (which experienced difficulty throughout a day trail ride) stumbling and falling and consequently causing injury to an inexperienced rider, is an inherent risk of a guided day trip trail horseback ride onto a steep rocky slope with no marked trail. Therefore, the issue of whether the Plaintiff's accident and injuries were an inherent risk of this specific type of horse back riding, in this specific situation should be submitted to a jury. Properly framed this duty question preserves and balances the legislature's dual intention of allowing a cause of action against negligent providers for non inherent risks, while also limiting the duty a provider owes to a recreational participant.

### Conclusion

When viewed in a light most favorable to the Plaintiff, there is a genuine issue of material fact as to whether a horse stumbling and falling under the facts of the present case is an inherent risk of day trip trail horseback ride. For the foregoing reasons, Defendants' Motion For Summary Judgment is **DENIED.**