Norman **WALTERS, Jr., and Linda Walters, husband and wife, Plaintiffs,**

v.

**GRAND TETON CREST OUTFITTERS, INC., a Wyoming corporation, Defendant.**

No. 92–CV–0041–B.

United States District Court, D. Wyoming.

Oct. 13, 1992.

---

Richard J. Mulligan, Jackson, Wyo., for plaintiffs.

Timothy J. Bommer, Jackson, Wyo., for defendant.

## ORDER ON MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

This matter came before the Court on September 18, 1992. The Court, having considered the materials on file both in support of and in opposition to the motion, having considered the arguments of counsel, and being fully advised in the premises, FINDS and ORDERS as follows:

### BACKGROUND

Plaintiff Norman Walters ("Walters") is a resident of Pennsylvania. Defendant Grand Teton Crest Outfitters, Inc., ("Teton Outfitters") is a Wyoming corporation.

On September 29, 1992, Mr. Walters was injured when he was thrown by a mule. The mule, named "Katie" was owned by the defendant Teton Outfitters. Walters had contracted with Teton Outfitters to go on an elk hunting trip in Teton County, Wyoming.

Approximately twenty minutes before Walters mounted the mule, the mule had rolled over on its back, kicking its legs, and "acting spooky and jumpy." There is a factual dispute as to whether the mule lost its footing or whether the mule was just spooked.

Walters learned to ride in his early teens and has been on numerous hunting trips.

Plaintiff brings four causes of action: 1. *Negligence and Respondeat Superior*—Walters alleges that Teton Outfitters was negligent in the supervision of its employee, Phil Major, and that Major was negligent in preparing, supervising and instructing Walters to ride. Walters alleges that Teton Outfitters failed to run its outfitting business so as to minimize the risk of this type of accident occurring.
2. *Strict Liability*—Walters alleges that Teton Outfitters had actual or constructive knowledge of the mule's dangerous propensities and that Teton Outfitters should be held strictly liable for Walter's injuries.
3. *Breach of Implied Warranty*—Walters claims that Teton Outfitters orally represented that the mule was safe to ride, when in fact, it was not.
4. *Breach of Express Warranty*—Teton Outfitters stated in an advertisement "We provide ... top quality guides and big sturdy and gentle mountain bred horses and mules." In fact, the mule was not "gentle."

Mr. Walters alleges that his pelvis has been severely and permanently injured. As a result of these injuries, Mrs. Walters is making a claim for loss of consortium, loss of support, and loss of companionship.

## STANDARD FOR REVIEW

### Motion to Dismiss

In considering a motion to dismiss, this Court must take the allegations of the pleadings as true and must construe them most favorably to the plaintiff. This Court will not grant a motion to dismiss unless it appears beyond doubt that the plaintiff could prove no set of facts supporting its claim which would entitle it to relief. *Huxall v. First State Bank*, 842 F.2d 249, 250–51 (10th Cir.1988).

### Summary Judgment

Summary judgment should be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981).... Under [Rule 56], the initial burden is on the moving party to show the court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party's burden may be met when that party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553.

Once the moving party has met these requirements, the burden shifts to the party resisting the motion. The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party resisting the motion "may not rest upon the mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The mere existence of a scintilla of evidence will not avoid summary judgment; there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Id.* at 251, 106 S.Ct. at 2511.

*Manders v. Okl. ex rel. Dept. of Mental Health*, 875 F.2d 263, 265 (10th Cir.1989).

## DISCUSSION

The defendant moves the Court to dismiss, or in the alternative, to grant summary judgment to the defendant in respect to all four causes of action.

### Assumption of Risk

■ Teton Outfitters argues that plaintiff Norman Walters is barred from recovery because he assumed the "inherent risk of riding." Defendant cites a similar Colorado case, where the Colorado Supreme Court barred recovery, holding that a person who rides a horse takes the ordinary risks incident to such pursuit. *Baar v. Hoder*, 482 P.2d 386, 388 (Colo.App.1971). However, this Court is not persuaded.

In Wyoming, assumption of risk used to be an absolute defense to a negligence action. *Ford Motor Co. v. Arguello*, 382 P.2d 886 (Wyo.1963). That is no longer true. Under Wyoming's comparative negligence statute, Wyo.Stat. 1-1-109 (1988), assumption of risk has been held to be a form of contributory negligence. *Brittain v. Booth*, 601 P.2d 532, 534 (Wyo.1979). Assumption of risk is now a basis for apportioning fault. *Id.* For these reasons, the Court rejects the defendant's argument that assumption of risk should be a bar to recovery.

### Recreation Safety Act

■ The Recreation Safety Act provides that "[a]ny person who takes part in any sport or recreational opportunity assumes the inherent risk of injury and all legal responsibility for damage, injury ... to himself or other persons or property that results from the inherent risks in that sport or recreational opportunity." Wyo.Stat. § 1-1-123 (Cum.Supp.1992). The effective date of the statute is June 8, 1989, well before Mr. Walter's September 29, 1992 accident. The statute is entitled "Assumption of Risk," and can be viewed as a statutory exception to the assumption of risk principles outlined above.

Teton Outfitters argues that the accident was an "inherent risk," which is defined in the statute as "any risk that is characteristic of or intrinsic to any sport or recreational opportunity and which cannot reasonably be eliminated, altered or controlled."

Walters counters that the accident was not an "inherent risk." He argues that when the mule rolled onto her back and started kicking, that it should have "raised a red flag" and Teton Outfitters should have given Walters a different animal to ride. Walters argues that this was a risk that could have been "reasonably eliminated, altered or controlled."

The Recreation Safety Act bars recovery for "inherent risks" only, not for *all risks*. *See Brewer v. Ski–Lift, Inc.*, 762 P.2d 226 (Mont.1988) (finding that a "skier responsibility" statute was overbroad, in violation of the Equal Protection Clause of the U.S. Constitution amend. XIV, because it stated that a skier assumes *all* risk of injury from skiing, not just the inherent risk). This Court finds that there is a question of fact as to whether the risk of injury to Mr. Walters was an inherent risk. Therefore, the Court declines to dismiss plaintiffs' claims, or to grant summary judgment to Teton Outfitters on the basis of Wyoming's Recreation Safety Act.

### Negligence

■ Defendant Teton Outfitters argues that it should be granted summary judgment on the negligence claims because there is no evidence that it acted negligently. However, this Court finds that there is a genuine issue of material fact as to the defendant's negligence. The record shows that "Katie" had thrown riders on two previous occasions. Further, there is a question of fact whether Teton Outfitters was negligent in letting Walters ride "Katie" after the incident where she rolled over on her back and kicked her legs in the air. Therefore, the Court declines to grant summary judgment to Teton Outfitters in respect to the negligence claims.

### Statute of Limitations

■ Teton Outfitters argues that plaintiffs are barred from bringing an action against a "licensed professional outfitter" more than two years after the incident. The defendant relies on Wyo.Stat. § 1-3-107 (1988), which states: "A cause of action arising from an act, error or omission

in the rendering of licensed or certified professional or health care services shall be brought within ... two (2) years of the date of the alleged act...."

In determining whether this statute applies, it is necessary to determine if a licensed outfitter is a "certified professional." "Professional" is defined in the statutes as "a person licensed under W.S. 33–1–101 through 33–38–110 for whom the normal qualifications for licensure include at least a year of specialized post secondary education ...". Wyo.Stat. § 9–2–1803(a)(iii) (1991).

Teton Outfitters concedes that a licensed outfitter is not required to have "at least a year of specialized education." Following the plain language of the statutory definition of a "professional," this Court finds that a licensed outfitter is not a "professional" as contemplated by Wyo.Stat. § 1–3–107 (1988). Therefore, recovery in this case is not barred by this statute of limitations.

### Strict Liability

Wyoming recognizes a strict liability cause of action against the possessor of an animal as described in the Restatement (Second) of Torts, § 509. *Abelseth v. City of Gillette*, 752 P.2d 430, 433 (Wyo.1988). The elements of that cause of action are "1. Possession of a domestic animal; and 2. That the possessor knew or had reason to know that the animal had dangerous propensities." *Id.* at 433–34.

The facts show that in addition to this accident, "Katie" had thrown riders on two previous occasions, once in 1986 and again in 1988. (*See* Correction and Addition to Deposition of Phil Major, filed October 8, 1992). After examining this evidence in the light most favorable to the nonmoving party, this Court concludes that there is a genuine issue of material fact as to whether or not Teton Outfitters knew or had reason to know that "Katie" had dangerous propensities. For this reason, the Court denies the defendant's motion to dismiss, or in the alternative to grant summary judgment in respect to the plaintiffs' strict liability claim.

### Implied and Express Warranties

Plaintiffs' third and fourth claims are for breach of implied warranty and breach of express warranty, respectively. In Wyoming, "[e]xpress and implied warranties are created and limited by §§ 34–21–230 through 34–21–235, W.S.1977 (U.C.C. §§ 2–313 through 2–318)." *Ogle v. Caterpillar Tractor Co.*, 716 P.2d 334, n. 2 (Wyo.1986). These sections have been recodified at Wyo.Stat. §§ 34.1–2–313 through 34.1–2–315 (1991).

Article Two of the Uniform Commercial Code applies to the sale of goods. Wyo. Stat. §§ 34.1–2–102, 34.1–2–106 (1991); 1 James White & Robert Summers, Uniform Commercial Code § 1–1 (3d ed. 1988). A "sale" is defined as "the passing of title from the seller to the buyer for a price." Wyo.Stat. § 34.1–2–106 (1991). "Goods means all things ... which are movable at the time of identification to the contract for sale ...." Wyo.Stat. § 34.1–2–105 (1991).

The issue is whether Article Two of the Uniform Commercial Code can be properly extended to this case. First, the Court agrees with the plaintiff that livestock is considered to be goods under the Uniform Commercial Code. *S–Creek Ranch Inc. v. Monier & Co.*, 509 P.2d 777, 782 (Wyo. 1973). However, it is clear to the Court that there was no "sale of goods" in this case. The parties have not suggested that Mr. Walters purchased the mule.

Nonetheless, plaintiffs urge the Court to follow a line of cases that extend application of Article Two beyond the sale of goods. Courts have been divided on whether or not Article Two of the Uniform Commercial Code should be applied to "contracts involving guaranties where the underlying agreement involved the transfer of goods, leases generally, ... contracts for the processing, repair, or treatment of goods, transactions involving the supplying of blood, drugs, or medical equipment to an individual...." Sonja Soehnel, *What Constitutes a Transaction, a Contract for Sale, or a Sale Within the Scope of UCC Article 2*, 4 A.L.R.4th 85, 92 (1981).

Plaintiffs cite *Quality Acceptance Corp. v. Million & Albers, Inc.*, 367 F.Supp. 771, 773 (D.Wyo.1973), in arguing that Article Two should extend to this case. In *Quality Acceptance*, Judge Kerr held that Article Two of the Uniform Commercial Code applied to a lease agreement, which provided that title to the goods would pass to the lessee at the end of the lease period. *Id.* Because title to the goods passed, the lease agreement was analogous to a sale of goods. However, *Quality Acceptance* can be distinguished from the present case because here there was no agreement to lease the mule, and more importantly, title to the mule never passed to Mr. Walters.

The Wyoming Supreme Court has applied Article Two of the Uniform Commercial Code to animal cases. In *Meuse–Rhine–Ijssel Cattle Breeders, Ltd. v. Y–Tex Corp.*, 590 P.2d 1306 (Wyo.1979), the Wyoming Supreme Court held that Article Two of the U.C.C. applied to a contract in which a cattle breeder agreed to sell bovine semen. *Id.* at 1309 n. 6. This was considered to be a sale of goods.

In *DeKalb Agresearch, Inc. v. Abbott*, 391 F.Supp. 152 (N.D.Ala.1974), a federal district court in Alabama held that the U.C.C. did not apply to a leasing contract for hens and hatching eggs because title did not pass. *Id.* at 153.

Applying the logic of these cases, the Court has decided to dismiss the plaintiffs' claims for express and implied warranties under Article Two of the Uniform Commercial Code.

■ Even so, plaintiffs insist that they are entitled to bring a warranty action under a common law theory of warranty. The cases cited by the plaintiffs relate to breach of implied warranty of contract in the sale of a house, drilling of a water well, and for work performed under a construction contract. *See Garriffa v. Taylor*, 675 P.2d 1284 (Wyo.1984); *Atlas Const. Co., Inc. v. Aqua Drilling Co.*, 559 P.2d 39 (Wyo.1977); *Cline v. Sawyer*, 618 P.2d 144 (Wyo.1980), respectively.

The Wyoming Supreme Court, in *Garriffa*, stated "[I]t has been held that such an express warranty of quality is governed by the common law principles applicable to warranties of quality in the sale of goods." *Garriffa* 675 P.2d at 1286, *quoting* 77 Am. Jur.2d Vendor and Purchaser § 336 (emphasis added). In *Cline*, the court recognized an implied warranty in construction contracts. These cases and the principles applied in them seem generally to apply to situations where there is a sale, and more particularly to the habitability or quality of a new home. However, it is the view of this Court the above cases do not adequately support claims for breach of express and implied warranties in the case at bar.

THEREFORE, IT IS

ORDERED that the defendant's motion to dismiss or in the alternative to grant summary judgment as to the plaintiffs' claims for negligence and strict liability be, and the same is hereby denied.

ORDERED that the plaintiffs' claims for breach of implied warranty and breach of express warranty are dismissed.