Tobe MORROW, Plaintiff,

v.

**XANTERRA PARKS & RESORTS and John Does I–IV, Defendants.**

**Case No. 12–CV–141–J.**

United States District Court,
D. Wyoming.

Jan. 4, 2013.

damages. *Birt v. Wells Fargo Home Mortg.,* *Inc.,* 75 P.3d 640, 656 (Wyo.2003).

Gerard R. Bosch, Law Offices of Jerry Bosch, Mary Alison Floyd, Wilson, WY, for Plaintiff.

Aaron P. Bradford, Angela L. Ekker, Maxwell N. Shaffer, Lathrop & Gage, Denver, CO, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM

ALAN B. JOHNSON, District Judge.

Plaintiff Tobe Morrow suffered injuries after he was bucked from a horse during a guided horseback ride conducted by Defendant Xanterra Parks & Resorts. Mr. Morrow brought suit against Xanterra and four John Doe defendants, alleging that his injuries resulted from Defendants' negligence. Xanterra counterclaimed against Mr. Morrow for breach of contract, alleging that Mr. Morrow had breached his promise not to sue Xanterra by bringing this lawsuit. Mr. Morrow has now filed a motion asking this Court to dismiss Xanterra's counterclaim. The Court grants Mr. Morrow's motion.

### STANDARD OF REVIEW

The standard of review for a Rule 12(b)(6) motion to dismiss applies here. In *Ashcroft v. Iqbal,* the Supreme Court articulated a two-step approach for district courts to use when considering a motion to dismiss. *See* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). First, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal* clarified that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *id.* at 678, 129 S.Ct. 1937, and that "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice," *id.*

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S.Ct. 1937. The Court has stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678, 129 S.Ct. 1937. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility lies somewhere between possibility and probability; a complaint must establish more than a mere possibility that the defendant acted unlawfully but the complaint doesn't need to establish that the defendant probably acted unlawfully. *See id.* "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

## FACTS

During a trip to Yellowstone National Park, Plaintiff Tobe Morrow went on a guided horseback ride conducted by Defendant Xanterra Parks & Resorts. Compl. 3, ECF No. 1. Xanterra required all participants to sign an acknowledgement of risk form (AOR agreement) before going on the ride. Def.'s Answer 11, ECF No. 19. One paragraph of the AOR agreement, titled "Assumption of Risk and Indemnification," states the following:

I agree to indemnify, protect, defend, and hold harmless [Xanterra], and [its] respective officers, directors, employees, and agents from and against any and all actions, claims, demands, damages (including property damage, physical injury and death), liabilities, costs, and ex-penses (including reasonable attorneys' fees) suffered by me, my participating minor children, and third parties, arising out of my rental and use ... of the horses and other equipment.

Def.'s Answer Ex. 1, ECF No. 19–1. The parties don't dispute that Xanterra presented Mr. Morrow with the AOR agreement and that Mr. Morrow signed it before going on the ride. *See* Def.'s Answer 11–12, ECF No. 19.

Mr. Morrow was injured after he was bucked from his horse during the ride. *See* Compl. 5–6, ECF No. 1. He brought suit against Xanterra and four John Doe defendants, alleging that his injuries resulted from Defendants' negligence. *See id.* at 6–14. Xanterra counterclaimed against Mr. Morrow for breach of contract, alleging that by signing the AOR agreement Mr. Morrow had agreed not to sue Xanterra and had breached that agreement by bringing this lawsuit. *See* Def.'s Answer 13, ECF No. 19. Xanterra seeks contractual indemnity from Mr. Morrow, claiming as damages the attorney fees and other related expenses it has incurred defending this lawsuit. *See id.* Xanterra also argues that, if damages are awarded against Xanterra in this matter, the AOR agreement obligates Mr. Morrow to reimburse Xanterra for those damages as well. *See* Hr'g Tr. 13, Dec. 28, 2012 ("[T]he damages to us can only be quantified in the form of whatever he recovers or whatever costs he forces us to spend defending the case.").

Mr. Morrow has now filed a motion asking this Court to dismiss Xanterra's breach of contract counterclaim. *See* Pl.'s Mot. 1–2, ECF No. 20. Mr. Morrow argues that Xanterra's counterclaim fails because Wyoming law does not permit Xanterra to recover the damages it seeks. *See* Pl.'s Mem. 7–9, ECF No. 21. Xanterra responds that it is entitled to those dam-

ages that put it in the position it would have been in had Mr. Morrow not breached his agreement not to sue, which are the attorney fees and related expenses Xanterra has incurred defending this lawsuit and any future damages awarded against Xanterra in this matter. *See* Def.'s Resp. 7–9, ECF No. 23. The Court first will discuss what law applies here before addressing whether Xanterra is entitled to damages. A brief conclusion follows.

## DISCUSSION

### I. Choice of Law

■ In a diversity case like this one, "except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *James River Ins. Co. v. Rapid Funding, LLC,* 658 F.3d 1207, 1216–17 (10th Cir.2011) (quoting *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). "A federal court in a diversity case applies the choice of law principles of the state in which it sits." *Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.,* 315 F.3d 1271, 1281 (10th Cir.2003) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Because this Court sits in Wyoming, the Court applies Wyoming's choice of law rules.

For contracts, Wyoming applies the law of the state where the contract was made unless one of two exceptions applies. *See J.W. Denio Milling Co. v. Malin,* 25 Wyo. 143, 165 P. 1113, 1116 (1917). First, if the contract was made in one state to be performed in another, then the law of the state of performance governs. *See id.* Second, if the parties agreed in the contract that a certain state's law would apply, then the law of that designated state applies. *See id.* Here, the contract between Mr. Morrow and Xanterra was made and performed in Wyoming and contained no choice of law provision. Thus, the Court will apply Wyoming substantive contract law here.

### II. Whether Xanterra Is Entitled to Damages

■ Breach of contract in Wyoming consists of the following elements: (1) a lawfully enforceable contract, (2) an unjustified failure to timely perform all or any part of what is promised therein, and (3) entitlement of the injured party to damages. *Schlinger v. McGhee,* 268 P.3d 264, 268 (Wyo.2012). The issue here relates to the third element: Whether Xanterra is entitled under Wyoming law to the damages it seeks.[1] Specifically, the issue is whether the AOR agreement obligates Mr. Morrow to indemnify Xanterra both for the attorney fees and related expenses it has incurred defending this lawsuit and for any future damages awarded against Xanterra. The Court concludes that under Wyoming law Xanterra is not entitled to the damages it seeks, and therefore the Court dismisses Xanterra's breach of contract counterclaim.

Xanterra is not entitled to damages because the AOR agreement's indemnity provision is unenforceable under Wyoming law. This is so for two reasons. First, an indemnity provision, like the one here, between a private consumer and a business entity that holds the private consumer liable for the business entity's own negligence is unenforceable as void against public policy. Second, the AOR agreement's indemnity provision does not expressly obligate Mr. Morrow to indemnify Xanterra for Xanterra's own negligence and is unen-

---

1. Because Mr. Morrow attacks Xanterra's breach of contract counterclaim only on the element of damages, *see* Pl.'s Mem. 9, ECF No. 21, for purposes of this Order, the Court assumes (without deciding) that a legally enforceable contract existed between the parties and that Mr. Morrow breached that contract by bringing this lawsuit.

forceable on that ground as well. The Court will discuss each of its reasons in turn.

### A. The AOR Agreement's Indemnity Provision Is Unenforceable as Void Against Public Policy.

This case raises the question of whether an indemnity provision between a private consumer and a business entity that holds the private consumer liable for the business entity's own negligence is enforceable under Wyoming law. This Court has found no Wyoming Supreme Court decision addressing the issue. Predicting how the Wyoming Supreme Court would rule, this Court previously held that such indemnity provisions are unenforceable as void against public policy. *See Madsen v. Wyo. River Trips, Inc.*, 31 F.Supp.2d 1321, 1324–25 (D.Wyo.1999).

In *Madsen*, a participant in a recreational rafting trip brought a negligence suit against the rafting company for injuries she sustained during the trip. *See id.* at 1323. Prior to the trip, the participant's husband had signed a release agreeing to indemnify the rafting company for any claim brought by himself or any member of his family. *See id.* After the participant brought her negligence suit, the rafting company counterclaimed against the husband, claiming that he was obligated to indemnify the rafting company for his wife's lawsuit. *Id.* The husband then filed a motion to dismiss the rafting company's counterclaim. *See id.* at 1325.

The *Madsen* court held that, under Wyoming law, an indemnity provision is unenforceable as void against public policy if (1) the indemnity provision is between a private consumer and a business entity and (2) the indemnity provision attempts to hold the private consumer (the indemnitor) liable for the alleged negligence of the business entity (the indemnitee). *See id.* at 1324–25. Applying that holding, the court concluded that the indemnity provision was unenforceable and void against public policy because it was between the participant's husband (a private consumer) and the rafting company (a business entity) and the indemnity provision sought to hold the husband liable for the rafting company's own negligence. *See id.* at 1325.

The *Madsen* court based its holding on three considerations. First, the court looked to Wyoming Supreme Court precedent and concluded that, "[w]hile the Wyoming Supreme Court has found that indemnity contracts are enforceable in commercial contexts, it has never held that such contracts were enforceable in a consumer services context." *Id.* at 1325. Second, the court recognized the general weight and trend of authority in support of the proposition that indemnity provisions attempting to hold a party liable for the indemnitee's own negligence are not enforceable. *See id.* (citing *Petraglia v. Benincasa Constr., Inc.*, 20 Conn. L. Rptr. 316, 316, 1997 WL 536333 (Conn.Super.Ct.1997) (collecting cases)). Third, noting the Wyoming Supreme Court's willingness to consider equitable concerns in the indemnity context, the court reasoned that the equities were strongly against the rafting company because "[i]t would be unjust to hold a passive individual liable, especially a consumer, for the negligence of a business entity." *Id.* at 1324–25.

■ The Court finds no reason to depart from its holding in *Madsen*. Here, the indemnity provision is between Mr. Morrow (a private consumer) and Xanterra (a business entity) and it attempts to hold Mr. Morrow liable for Xanterra's own negligence. *Cf. id.* at 1324–25. Thus, under *Madsen*, the AOR agreement's indemnity provision is not enforceable. This means that Xanterra is not

entitled to indemnification from Mr. Morrow for this lawsuit; Xanterra is not entitled to be reimbursed by Mr. Morrow for its attorney fees, related expenses, or any future damages awarded against Xanterra. Xanterra is therefore not entitled to the damages that it seeks and dismissal of Xanterra's breach of contract counterclaim is appropriate.

B. *The AOR Agreement's Indemnity Provision Is Unenforceable Because It Does Not Expressly Obligate Mr. Morrow to Indemnify Xanterra for Xanterra's Own Negligence.*

Even if indemnity provisions like the one here were enforceable as a general matter under Wyoming law, this particular indemnity provision still would be unenforceable because it does not expressly obligate Mr. Morrow to indemnify Xanterra for Xanterra's own negligence. Some background is useful here:

There is a split of authority among various jurisdictions as to whether an indemnitee can recover from the indemnitor attorney's fees expended in defending an action alleging the indemnitee's own negligence. Some courts insist that the indemnification agreement must express in explicit terms the intent to indemnify the indemnitee for its own negligence. Other courts have declined to consider the nature of the allegations asserted against the indemnitee when determining whether indemnification is warranted.

. . . .

In a majority of states, courts have held that for an indemnitee to recover attorney's fees and other litigation costs incurred in the defense of a claim alleging the indemnitee's own negligence, the indemnity agreement must clearly indicate that the parties intended that result. This is known as the "express-negligence test." In a minority of states, courts have declined to consider the nature of the allegations asserted against the indemnitee when determining whether indemnification is warranted.

George E. Powell, Jr., Annotation, *Indemnitor's Liability to Indemnitee for Attorney's Fees and Expenses Arising Out of Defense of Action Alleging Indemnitee's Negligence*, 59 A.L.R.5th 733, 733, 741 (1998).

In *Wyoming Johnson, Inc. v. Stag Industries, Inc.*, the Wyoming Supreme Court weighed in on this jurisdictional split and adopted the majority rule, holding that "[i]f the indemnitee means to throw the loss upon the indemnitor for a fault in which he himself individually shares, he must express that purpose beyond any peradventure of doubt." *Wyo. Johnson, Inc. v. Stag Indus., Inc.*, 662 P.2d 96, 99 (Wyo.1983); *see* 41 Am Jur.2d *Indemnity* § 16 (2012) ("The 'express negligence doctrine' provides that parties who have agreed to indemnify the indemnitee from the consequences of its own negligence must specifically express that intent within the four corners of their contract."). The court held that an indemnity provision making an indemnitor liable for an indemnitee's own negligence is enforceable under Wyoming law only if "the contract language specifically focuses attention on the fact that by the agreement the indemnitor was assuming liability for the indemnitee's own negligence." *Id.* The court's holding grew from the general principle that indemnity provisions "that exculpate the indemnitee from the consequences of his own negligence are disfavored by the courts and strictly construed." *Union Pac. R.R. Co. v. Caballo Coal Co.*, 246 P.3d 867, 872 (Wyo.2011).

■ Here, the AOR agreement's indemnity provision makes no explicit reference to Mr. Morrow's obligation to indemnify Xanterra for Xanterra's own negligence.

*See* Def.'s Answer Ex. 1, ECF No. 19–1. Although the AOR agreement obligates Mr. Morrow to indemnify Xanterra "from and against any and all actions," which arguably includes negligence actions, "contracts purporting to indemnify a party against its own negligence will only be enforced if they clearly express such an intent, *and a general provision indemnifying the indemnitee against any and all claims, standing alone, is not sufficient.*" 41 Am.Jur.2d *Indemnity* § 18 (2012) (emphasis added). "[M]ere general, broad, and seemingly all-inclusive language is not sufficient to impose liability for an indemnitee's own negligence." *Id.* The AOR agreement does not specifically focus attention on the fact that by the agreement Mr. Morrow was assuming liability for Xanterra's own negligence and thus the AOR agreement's indemnity provision does not pass the test for enforceability under Wyoming law. *See Stag Indus.,* 662 P.2d at 99. Because the AOR agreement's indemnity provision is not enforceable, Xanterra is not entitled to be reimbursed by Mr. Morrow for its attorney fees, related expenses, or damages awarded against it in this matter.[2] In sum, Xanterra is not entitled to the damages it seeks because the AOR agreement's indemnity provision is unenforceable as it does not expressly obligate Mr. Morrow to indemnify Xanterra for Xanterra's own negligence, and thus dismissal of Xanterra's counterclaim is appropriate on that ground as well.

The Court's order should not be misunderstood. Although the Court concludes that the AOR agreement's indemnity provision is unenforceable to the extent that it requires Mr. Morrow to indemnify Xanterra for its attorney fees, related expenses, and any damages awarded against Xanterra, nothing in this Court's order bears on whether the AOR agreement represents a legally enforceable exculpatory agreement precluding Mr. Morrow's negligence claims against Xanterra. *See Street v. Darwin Ranch, Inc.,* 75 F.Supp.2d 1296, 1299 (D.Wyo.1999) (holding that, under Wyoming law, a party signing a legally enforceable exculpatory agreement cannot bring a negligence action against the released party). Nor does the Court's order implicate that line of Wyoming Supreme Court decisions discussing the validity of exculpatory agreements. *See Massengill v. S.M.A.R.T. Sports Med. Clinic, P.C.,* 996 P.2d 1132 (Wyo.2000); *Milligan v. Big Valley Corp.,* 754 P.2d 1063 (Wyo.1988); *Boehm v. Cody Country Chamber of Commerce,* 748 P.2d 704 (Wyo.1987); *Schutkowski v. Carey,* 725 P.2d 1057 (Wyo.1986). The Court has concluded only that Xanterra cannot use the AOR agreement as a sword against Mr. Morrow; the Court's order does not reach the question of whether Xanterra can use the AOR agreement as a shield against Mr. Morrow's negligence claims.

## CONCLUSION

The Court dismisses Xanterra's breach of contract counterclaim seeking indemnification from Mr. Morrow because Xanterra is not entitled to damages. This is so because the AOR agreement's indemnity provision is unenforceable under Wyoming law for two reasons. First, an indemnity provision, like the one here, between a private consumer and a business entity that attempts to hold the private consumer liable for the business entity's own negli-

---

**2.** Even if Xanterra were entitled to attorney fees and related expenses it has incurred defending this lawsuit, Xanterra would not be entitled to recover damages awarded against it in this matter from Mr. Morrow. *See* Scott R. Smith, *Avoiding the Effect of a Recreational Activity Liability Release,* 33 Am.Jur. Proof of Facts 3d at 421, § 15 (1995) (stating that an "indemnification clause cannot be used to require a participant to reimburse the operator for damages awarded to the participant").

gence is void as against public policy. Second, the indemnity provision does not expressly obligate Mr. Morrow to indemnify Xanterra for Xanterra's own negligence and thus is unenforceable on that ground as well. Xanterra is therefore not entitled to damages and the Court **GRANTS** Mr. Morrow's motion and **DISMISSES WITH PREJUDICE** Xanterra's breach of contract counterclaim.